### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| M. DIANE KOKEN, in her official capacity as Insurance Commissioner of the Commonwealth of Pennsylvania, as Liquidator of RELIANCE INSURANCE COMPANY (IN LIQUIDATION), | ) ) ) ) | C.A. No. 07-048-JJF |
| Plaintiff, | ) ) | JURY TRIAL DEMANDED |
| v. | ) ) ) | |
| PAULA FINANCIAL, | ) ) | |
| Defendant. | ) | |

## NOTICE OF DEPOSITION AND SUBPOENA DIRECTED TO
## JOSEPH GIORDANO

PLEASE TAKE NOTICE that pursuant to Rules 26 and 45 of the Federal Rules

of Civil Procedure, Defendant Paula Financial ("PAULA") has served the attached

subpoena on Joseph Giordano, c/o Gerald Arth, Attorney at Law, Fox Rothschild, LLP,

2000 Market Street, Tenth Floor, Philadelphia, Pennsylvania 19103. Pursuant to the

subpoena, PAULA will, by and through its undersigned counsel, take the deposition upon

oral examination of Joseph Giordano, on February 26, 2008, at 9:00 a.m., at the offices of

Fox Rothschild, LLP, Princeton Pike Corporate Center, 997 Lenox Drive, Building 3, in

Lawrenceville, New Jersey. The deposition is for the purpose of discovery and

evidentiary use and may be recorded by stenographic and/or videographic means. The

deposition will continue from day to day until completed. You are invited to attend and

cross-examine.

RLF1-3255574-1

Chad M. Shandler (#3796)
shandler@rlf.com
Richards, Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE  198901
(302) 651-7700
*Attorney for Defendant PAULA Financial*

Dated:  February 21, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2008, I electronically filed the foregoing with the

Clerk of Court using CM/ECF which will send notification of such filing(s) to the following,

who have also been served as noted:

### VIA HAND DELIVERY

Sheldon K. Rennie, Esq.
Fox Rothschild, LLP
919 N. Market Street, Suite 1300
P.O. Box 2323
Wilmington, DE  19899-2323

I hereby certify that on February 21, 2008, the foregoing was sent to the following non-

registered participants in the manner indicated:

### VIA FEDERAL EXPRESS

Gerald E. Arth, Esq.
Cheryl A. Garber, Esq.
Fox Rothschild, LP
2000 Market Street, Tenth Floor
Philadelphia, PA  19103-3291

_____
Chad M. Shandler (#3796)
shandler@rlf.com
Richards, Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE  198901
(302) 651-7700
  *Attorney for Defendant PAULA Financial*

Dated:  February 21, 2008

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

M. Diane Koken, etc., Plaintiff

V.

PAULA Financial, Defendant

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 07-048-JJF
(District of Delaware)

TO:   Joseph Giordano, c/o Gerald Arth, Attorney at Law
Fox Rothschild, LLP
2000 Market Street, Tenth Floor, Philadelphia, PA 19103-3291
(215) 299-2720

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION<br>Fox Rothchild, LLP, Princeton Pike Corporate Center, 997 Lenox Drive, Building 3, Lawrenceville, NJ 08648-2311, (609) 896-3600 | DATE AND TIME<br>Tues , 02/26/08, 9:00 a.m. |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See attached Exhibits A and B.

| PLACE<br>Fox Rothchild, LLP, Princeton Pike Corporate Center, 997 Lenox Drive, Building 3, Lawrenceville, NJ 08648-2311, (609) 896-3600 | DATE AND TIME<br>Tues , 02/26/08, 9:00 a.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6)

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>, Attorney for Defendant PAULA Financial | DATE<br>February 20, 2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jonathan G. Fetterly
Holme Roberts & Owen LLP
777 S. Figueroa Street, Suite 2800, Los Angeles, CA 90017    Phone 213.572.4300

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.FormsWorkflow.com

AO88 (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | February 20, 2008 | garth@foxrothschild com |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Gerald Arth, Esq. | Email |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Jonathan G. Fetterly, Esq. | Attorney |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on    February 20, 2008
                         DATE

SIGNATURE OF SERVER
Jonathan G. Fetterly, Esq.

ADDRESS OF SERVER
777 South Figueroa Street, Suite 2800, Los Angeles, CA 90017

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(C) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
    (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
    (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
    (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises – or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
    (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
        (i) fails to allow reasonable time for compliance;
        (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
        (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    (B) If a subpoena
        (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
        (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
        (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(D) DUTIES IN RESPONDING TO SUBPOENA.
    (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand
    (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
    (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
    (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery
    (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
    (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A)

American LegalNet, Inc.
www.FormsWorkflow.com

EXHIBIT A

## EXHIBIT A

## DEFINITIONS

1.      The term "DOCUMENT" OR "DOCUMENTS" is used in its customary broad sense, and shall refer to written material of whatever kind or nature, whether typed, printed, handwritten or otherwise produced, including without limitation, letters, memoranda, notes, contracts, bills and invoices, together with photographs, photostats, photocopies, audio or video recordings, computerized files, database records, voice- and/or phonemail recordings, electronic-mail ("email") messages, scanned images, and any other electronic data compilations, however stored.

2.      "PAULA" means Defendant Paula Financial, or its predecessors, affiliates, subsidiaries, or any entity through which it conducts business or administers service.

3.      "RELIANCE" means Reliance Insurance Company, including Reliance Insurance Company in liquidation and all or any of its employees, agents, and all other persons acting on its behalf or at its direction.

4.      "COMPLAINT" means the Complaint filed by YOU in this action.

5.      "MONTLAKE" means both Montlake Insurance Holdings LLC f/k/a Altus Insurance Holdings LLC, and Montlake Casualty Company Ltd. f/k/a Altus Casualty Company Ltd.

6.      "COMMUNICATION" means any transmittal of information in the form of facts, ideas, inquiries or otherwise. A request for communications includes correspondence, telexes, telecopies, email, all attachments and enclosures thereto, computer tapes, discs, telephone tape recordings, recordings of any other type in any medium of written or oral communications, phone logs, message logs, and notes and memoranda of, or referring or relating to, written or oral communications.

7.      The term "CONCERNING" means relating to, referring to, reflecting, describing, evidencing or constituting.

1

#7670 v1

8.    "FRIEDE" means Friede, Goldman Halter, Inc.

9.    "FRIEDE POLICY" means United Pacific Insurance Company Policy # ICW 1950507.

10    "ZURICH RE" means Zurich Reinsurance North America (now Converium).

11.    "GUARANTEE" means the document, including any drafts thereof, attached hereto as Exhibit B.

12.    The term "PERSON" or "PERSONS" shall mean individuals, corporations, proprietorships, partnerships, firms, associations, joint ventures, banks, any government or governmental bodies, commissions, boards or agencies, and all other legal entities, and if appropriate or indicated, divisions, subsidiaries or departments of corporations or other entities, and their principals, agents, representatives, officers or employees.

13.    "WC POLICIES" shall have the same meaning and definition as provided in the GUARANTEE, attached hereto as Exhibit B.

14.    "UM AGREEMENT" shall have the same meaning and definition as provided in the GUARANTEE, attached hereto as Exhibit B.

15.    All words, terms and phrases not specifically defined herein are to be given their normal and customary meaning in the context in which they are used in these Requests.

## DOCUMENT REQUESTS

1.    All COMMUNICATIONS between PAULA and MONTLAKE relating to the WC POLICIES or UM AGREEMENT.

2.    All COMMUNICATIONS between RELIANCE and MONTLAKE referring or relating to the WC POLICIES or UM AGREEMENT.

3.    All COMMUNICATIONS between RELIANCE and ZURICH RE concerning PAULA, MONTLAKE, and/or FRIEDE referring or relating to the WC POLICIES or UM AGREEMENT.

2

4.     All COMMUNICATIONS among RELIANCE, ZURICH RE, and MONTLAKE referring or relating to the WC POLICIES or UM AGREEMENT.

5.     All COMMUNICATIONS between MONTLAKE and anyone referring or relating to the GUARANTEE.

6.     All COMMUNICATIONS between MONTLAKE and anyone referring or relating to the reasons for the cancellation of the FRIEDE POLICY.

7.     All DOCUMENTS which refer, relate, constitute or embody payments by state guaranty associations on behalf of FRIEDE.

8.     All DOCUMENTS which refer, relate, constitute or embody claims by state guaranty associations seeking reimbursements for payments made on behalf of FRIEDE.

9.     All DOCUMENTS which refer, relate, constitute or embody payments by FRIEDE for retrospective premium.

10.     All DOCUMENTS which refer or relate to the MONTLAKE liquidation.

11.     All DOCUMENTS which refer or relate to the GUARANTEE.

12.     All DOCUMENTS relating to the calculation of the retrospective premium for the FRIEDE POLICY.

13.     All DOCUMENTS that refer or relate to any letter of credit given to MONTLAKE by FRIEDE or Offshore Marine Indemnity Company.

14.     All DOCUMENTS that refer or relate to any claim by Offshore Marine Indemnity Company or FRIEDE that RELIANCE wrongfully drew on a letter of credit on or about April 18, 2003.

15.     All DOCUMENTS relating to the cancellation of the Workers Compensation and Employers Liability Insurance Policy No. ICW 195057.

16.     All DOCUMENTS that refer or relate to the approximately three million dollars in MONTLAKE collateral that was given to RELIANCE as part of the MONTLAKE liquidation and settlement.

3

17.    All DOCUMENTS that refer or relate how RELIANCE applied the
approximately three million dollars in MONTLAKE collateral that was given to RELIANCE as
part of the MONTLAKE liquidation and settlement.

4

EXHIBIT B

PAULA FINANCIAL
GUARANTEE AND INDEMNIFICATION

BACKGROUND TO GUARANTEE AND INDEMNIFICATION

WHEREAS, PAULA Financial, a Delaware corporation ("PFC") is a member and equity holder of Altus Insurance Holdings, LLC, a limited liability company formed under the laws of Delaware ("Altus");

WHEREAS, Altus has requested Reliance Insurance Company, Reliance National Insurance Company, Reliance National Indemnity Company and United Pacific Insurance Company ("Reliance") to be the issuing insurance company for the underwriting of Workers' Compensation and United States Longshore and Harbor Worker's Compensation Act insurance for risks principally located in the states of Alabama, Alaska, California, Louisiana, Mississippi, Oregon, Texas and Washington ("WC Policies") and to enter into an Underwriting Management Agreement effective February 1, 1999 to do so ("UM Agreement");

WHEREAS, the risk of loss assumed by Reliance on the WC Policies is wholly reinsured to Zurich Reinsurance (North America), Inc. ("Zurich") and subsequently retroceded in part by Zurich to Paula Insurance Company (a subsidiary of PFC) and Altus Casualty Insurance Company, Ltd (a subsidiary of Altus);

WHEREAS, Altus and PFC wish to induce Reliance to be the underwriting insurer for the WC Policies but Zurich is unwilling to accept and assume as reinsurer certain risks associated with and assumed by Reliance in underwriting the WC Policies which Reliance is unwilling to retain without the guarantee and indemnification of PFC;

WHEREAS, Reliance is willing to become an issuing insurance carrier for the WC Policies if PFC guarantees payment and provides indemnification against certain exposures that Reliance assumes or is exposed to by reason of underwriting and issuing the WC Policies;

NOW THEREFORE, for value received and acknowledged by PFC as sufficient and received and in further consideration of the agreement of Reliance to become the issuing insurance carrier for the WC Policies and intending to be legally bound, PFC:

1.    Unconditionally and irrevocably will indemnify, hold harmless and reimburse Reliance for a share of all taxes, assessments, fees, loss, allocated loss expense, and related costs and expenses ("assessments"), incurred by Reliance that arise from risks assigned to Reliance under the workers' compensation and United States Longshore and Harbor Worker's Compensation Act residual market plan(s) of any jurisdiction (including the United States) that in the sole discretion of Reliance are incurred by Reliance due to the issuance by Reliance of the WC Policies under the UM Agreement in that jurisdiction. The amount of indemnity and reimbursement due Reliance from PFC will equal the sum obtained by multiplying the Reliance actual net loss incurred by Reliance from the residual market mechanism in that jurisdiction by the fraction obtained by dividing the gross premium written by Reliance from WC Policies in that jurisdiction under the UM Agreement by the total gross premium written for all workers' compensation policies in that jurisdiction by Reliance, all as respects the period under calculation.

2.    Unconditionally and irrevocably will indemnify, hold harmless, and reimburse Reliance for a share of all taxes, assessments, fees, loss, allocated loss expense, and related costs and expenses ("assessments"), incurred by Reliance that arise from and are levied by reason of the mandated membership or participation of Reliance in any guarantee association, insolvency fund, FAIR Plan, or similar pool, association or syndicate ("Funds and Pools") of any jurisdiction that in the sole discretion of Reliance are incurred by Reliance due to the issuance by Reliance of the WC Policies under the UM Agreement in that jurisdiction. The amount of indemnity and reimbursement due Reliance from PFC will equal the sum obtained by multiplying the Reliance net assessments (after applying credits actually received by Reliance by reason of the

PAULA FINANCIAL
GUARANTEE AND INDEMNIFICATION

assessments, if any) from the Funds and Pools in that jurisdiction by the fraction obtained by dividing the gross premium written by Reliance from WC Policies in that jurisdiction under the UM Agreement by the total gross premium written for all policies in that jurisdiction for assessments from the Funds and Pools, all as respects the period under calculation.

3. Unconditionally and irrevocably will indemnify, hold harmless, and reimburse Reliance for all fines and related regulatory charges and assessments, as well as related legal defense costs, levied by any jurisdiction or any statistical reporting agency or workers' compensation rating bureau in that jurisdiction by reason of the actions or inactions of Altus in connection with any WC Policy issued by Reliance under the UM Agreement in that jurisdiction;

4. Unconditionally and irrevocably will indemnify, hold harmless, and reimburse Reliance from and against any and all claims, suits, loss, damage, liability, costs and expenses, including reasonable attorney fees, incurred by Reliance and arising from the professional acts, errors or omissions of Altus in performing under the UM Agreement including but not limited to, without limitation, acts, errors or omissions relating to market conduct, unfair insurance practices or other professional errors and omissions of Altus.

5. Unconditionally and irrevocably will indemnify, hold harmless, and reimburse Reliance from and against any and all costs and expenses, including reasonable attorney fees, (other than loss and expense incurred under the coverage terms of a WC Policy) that arise or result from the suspension or termination by any party to the UM Agreement and/or any related third party claims administration agreement that are incurred by Reliance in performing or contracting with a third party (which must be nationally or regionally recognized as competent to perform such services and/or obligations) to perform policy service or claims investigation, adjustment, defense or settlement obligations with respect to the WC Policies after such suspension or termination.

6. Unconditionally and irrevocably will indemnify, hold harmless, and reimburse Reliance from and against any and all loss from the loss of the time value of money that may be incurred by Reliance by virtue of the failure of Altus to reimburse the Controlled Loss Disbursement Account on the following business day after a disbursement is made from that account which was established under that certain Claims Service Agreement between Altus and Reliance made effective February 1, 1999. The time value of money will be based on Reliance's average return on invested cash and will be measured from the date that Reliance funds are actually drawn from the Controlled Disbursement Account until the date that Reliance is reimbursed for the use of those Reliance funds.

7. Unconditionally and irrevocably guarantees to Reliance the due and punctual payment (within five (5) business days of written notice of Reliance therefor) of:

   a. all deductible reimbursement obligations of policyholders under any policy issued with deductible provisions;

   b. all premium adjustments of retrospective rated or loss sensitive rated policies;

   c. the full payment by Zurich to Reliance of any fronting fees described on Exhibit A attached hereto as Exhibit A;

   d. and any costs and expenses incurred by Reliance in enforcing this Guarantee and Indemnification.

PAULA FINANCIAL
GUARANTEE AND INDEMNIFICATION

8.  Waives (i) any right to require Reliance to exhaust remedies against either Altus or Zurich or to take any other action against Altus or Zurich, (ii) any requirement that Reliance file any claim in the event of the insolvency or bankruptcy of Altus or Zurich, (iii) any defenses available to PFC regarding bankruptcy, insolvency or other similar matter, (iv) notice of, or any right to contest the enforceability of this Guarantee and Indemnification based upon, any modification of any agreement that Reliance may have with Altus or Zurich, (v) notice of any default under or breach of any agreement by Altus or Zurich of any agreement Reliance may have with Altus or Zurich, (vi) demand and presentation by Reliance for payment upon Altus or Zurich, (vii) protest, notice of protest and diligence of bringing suit against Altus or Zurich, and (viii) any other defenses available to PFC that are not available to Altus or Zurich. PFC further waives any and all defenses and discharges available to an indemnitor, guarantor, surety or co-obligor as such to the full extent permitted by law.

9.  Agrees that this Guarantee and Indemnification will not be discharged except by complete performance by Altus and Zurich of all of their respective obligations to Reliance arising from any agreements Reliance may have with Altus or Zurich and by PFC of all of its obligations under this Guarantee and Indemnification. In the event that Reliance is required to relinquish or return any payments, in whole or part, which had been previously applied to or retained for application against any obligation under this Guarantee and Indemnification, by reason of a proceeding arising under any applicable bankruptcy or insolvency law, or for any other reason, this Guarantee and Indemnification shall automatically continue to be effective notwithstanding any previous cancellation or release of this Guarantee and Indemnification.

10. Represents and Warrants that as of the date of this Guarantee and Indemnification:

    a.  PFC is a corporation duly organized and is validly existing and in good standing under the laws of the State of Delaware.

    b.  PFC has the corporate power and authority to execute and deliver this Guarantee and Indemnification and to perform its obligations under this Guarantee and Indemnification and to carry out the transactions contemplated by this Guarantee and Indemnification.

    c.  The execution and delivery of this Guarantee and Indemnification and the consummation of the transactions contemplated by this Guarantee and Indemnification have been duly authorized by all necessary corporate action on the part of PFC.

    d.  Upon the execution and delivery of this Guarantee and Indemnification by PFC, this Guarantee and Indemnification shall constitute the legal, valid and binding obligation of PFC enforceable against PFC in accordance with its terms, subject to applicable bankruptcy or similar laws, rules and regulations affecting creditors generally.

    e.  Neither the execution and delivery of this Guarantee and Indemnification by PFC nor the consummation of the transactions contemplated in this Guarantee and Indemnification does or will conflict with or result in a violation or breach of or constitute (with or without notice or lapse of time or both) a default under, or result in a right of termination or acceleration under, or the creation of any lien upon any of the material properties or assets of PFC under, any of the terms, conditions or provisions of any of the following:

        i)   the charter documents or by-laws of PFC;

        ii)  any other agreement or other instrument to which PFC is a party or by which it is bound; or

PAULA FINANCIAL
GUARANTEE AND INDEMNIFICATION

       iii)     any statute, law, rule, regulation, or judicial, administrative, governmental, regulatory or arbitration order, award, judgment, writ, injunction or decree applicable to PFC or any agreement with any governmental or regulatory authority.

    f.    There are no consents, authorizations, orders, approvals or non-disapprovals of, or filings or registrations with, any governmental department, commission, board, other regulatory authority or third party that are required to be obtained or submitted by PFC prior to the execution and delivery of this Guarantee and Indemnification or the performance and consummation of the transactions contemplated by this Guarantee and Indemnification.

11.    Miscellaneous

    a.    This Guarantee and Indemnification may not be assigned by PFC except with the express written consent of Reliance and shall be binding upon the successors and assigns of PFC.

    b.    This Guarantee and Indemnification shall be construed in accordance with and governed by the laws of the Commonwealth of Pennsylvania (without giving effect to the conflicts of laws principles thereof). If any term of this Guarantee and Indemnification thereof shall be invalid or unenforceable, the remainder of this Guarantee and Indemnification shall remain in full force and effect.

IN WITNESS WHEREOF, intending to be legally bound, PFC has executed this Guarantee by its duly authorized officers to be effective March 15, 1999.


PAULA FINANCIAL                    ATTEST:

By: _____        By: _____

Name _____     Name: _____

Title:   President                      Title:   Secretary